UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ISABEL CAIRO, *pro se*,                                    :
                                                           :
                        Plaintiff,                         :
                                                           :
                -against-                                  :     **MEMORANDUM AND ORDER**
                                                           :     11-CV-3839 (DLI)
COMMISSIONER OF SOCIAL SECURITY,                           :
                                                           :
                        Defendant.                         :
----------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

*Pro se* plaintiff Isabel Cairo ("Plaintiff") filed an application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act") on July 20, 2009. (R. 19, 119-21.)[1] By a decision dated May 21, 2010, Administrative Law Judge Lori Romeo (the "ALJ") concluded that Plaintiff was not disabled within the meaning of the Act. (R. 14-19.) On July 29, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-4.) Plaintiff filed the instant appeal seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

The Commissioner moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. (*See* Docket Entry No. 12.) Plaintiff submitted an affidavit in opposition to the Commissioner's motion. (*See* Pl.'s Aff. in Opp'n to Def.'s Mot. ("Pl.'s Aff."), Docket Entry No. 14.)

For the reasons set forth below, the Commissioner's motion is denied and the matter is remanded for further administrative proceedings consistent with this opinion.

---

[1] "R." citations correspond to numbered pages in the certified administrative record. (Docket Entry No. 15.)

## BACKGROUND

**A.    Non-Medical Evidence**

Plaintiff was born in 1958. (R. 119, 162.) She completed the seventh grade in 1973, but received no further education or vocational training. (*Id.*) From approximately 1991 to 2001, Plaintiff worked in a factory, where she was tasked with gluing bands onto hats. (R. 31-32, 158.) On a typical work day at the factory, Plaintiff sat for approximately six hours, stood for approximately two to three hours, and lifted no more than five pounds of material at a time. (R. 31-32.) From approximately 2002 until May 2009, Plaintiff worked as an office cleaner. (R. 29, 158.) In that position, Plaintiff stood or walked during her entire shift and lifted up to forty pounds. (R. 30, 159, 191.) Plaintiff alleges a disability onset date of May 15, 2009. (R. 16.)

**1.    September 2009 Self-Report Evidence**

On September 23, 2009, approximately four months after the alleged onset date, Plaintiff completed a self-function report. (R. 178-97.) In that report, Plaintiff claimed she suffered on a daily basis from a "strong" and "stabbing" pain in her back and both legs; the pain was exacerbated by walking, standing, and sitting. (R. 187-88.) Plaintiff indicated that she could no longer sit or stand for long periods of time. (R. 183-84.) Plaintiff also noted that her daily activities had been affected because she constantly needed to change positions and rest her legs in order to relieve the pain. (R. 189.) In addition to difficulties with walking, standing, and sitting, Plaintiff noted that lifting, climbing stairs, kneeling, and squatting caused sharp pains and were hard to do on a repetitive basis. (R. 180, 184.) Plaintiff also indicated that the pain made sleeping more difficult. (R. 180.)

Plaintiff stated that, during a typical day, she made breakfast, drank coffee with her sister, socialized, performed household chores, and watched television. (R. 180, 189.) Plaintiff indicated she could no longer prepare "long meals," but still spent about 30 minutes per day

2

cooking. (R. 181.) Plaintiff also noted that she could still iron, wash dishes, clean, and do laundry. (R. 182.) Furthermore, Plaintiff stated that she left her apartment on a daily basis, without assistance, and could walk for up to 45 minutes before needing to rest for about 5 minutes. (R. 182, 184, 185.) She also indicated that she shopped for her own groceries. (R. 183.)

2. **Testimonial Evidence**

On May 4, 2010, Plaintiff, appearing *pro se*, testified at a hearing before the ALJ that she had stopped working as an office cleaner on May 15, 2009 because she suffered from leg and back pain and could no longer stand and perform her assigned duties. (R. 28-29.) Plaintiff also stated that she is unable to sit for long periods of time due to the pain; instead, on a typical day, Plaintiff spends her time "mostly lying down" in order to alleviate the pain. (R. 36, 38.) Plaintiff indicated that her treating physician, Dr. Jacob George, recommended that she take medication, rest, and participate in physical therapy three times per week. (R. 33.) Plaintiff did not testify concerning the type and dosage of her prescription medication at the hearing; however, other portions of the record indicate that Plaintiff takes Meloxicam, Lyrica, and Synthroid. (R. 204, 212-13, 228, 252.) At one point during the hearing, Plaintiff stated that her medication alleviated her pain to a zero out of ten on a ten-point scale; however, when prompted to elaborate, Plaintiff stated, "[The medication] helps me, it gets it numb a bit but, no it doesn't take [the pain] away completely." (R. 34.) Plaintiff also noted that, at times, the medication causes dizziness and vomiting. (R. 35.)

Plaintiff indicated that she is able to cook every day and dress herself. (R. 35.) Plaintiff also stated that she was able to do "general cleaning" at home, but could not clean everything at the same time. (*Id.*) Plaintiff stated that she could stand for approximately one and a half hours

3

before experiencing pain, and that she could walk only for a block before experiencing pain. (R. 36.) Plaintiff also indicated that she shopped for groceries once a month, but was not able to carry the groceries home from the store; instead the store delivered the groceries to her home, and she was able to put away the groceries with her sister's assistance. (R. 37.)

**B.    Medical Evidence**

    **1.    Medical Evidence Prior to the Onset Date**

On October 2, 2008, Dr. Matthew Diament performed a magnetic resonance imagining scan ("MRI") on Plaintiff, which revealed degenerative changes of the lumbar spine, a shallow disc bulge at L4-L5, which flatted on the ventral thecal sac, and a two millimeter broad-based central disc herniation at L5-S1, with an annular tear effacing the ventral epidural fat. (R. 234.) The MRI revealed no evidence of central canal or neural foramen stenosis. (*Id.*)

    **2.    Medical Evidence After the Onset Date**

        *i.    Dr. George*

In a note dated June 27, 2009, Dr. George, Plaintiff's treating physician, handwrote on a one-page prescription note that Plaintiff was "unable to work" and "need[ed] disability papers to be filed." (R. 249.) Approximately one month later, on July 20, 2009, Dr. George opined on a one-page prescription note that the "[Plaintiff] is being treated . . . for lumbar radiculopathy." In that note, Dr. George also stated that "the type of work [Plaintiff] does will be limited by her illness" and "[i]t is more likely that [Plaintiff's] back pain is exacerbated by mopping/housecleaning services." (R. 233.) The record does not contain any additional medical records or findings from Dr. George.

##### ii. Arbor WeCare

On July 6, 2009, Plaintiff was interviewed by Tiffany Rice, an SSI case manager at Arbor WeCare. (R. 269-78.) According to Rice's notes, Plaintiff indicated that her severe back pain presented a barrier to employment. (R. 277.) Also on July 6, 2009, Plaintiff was examined by Dr. Ian Prescot, an internist. (R. 279-83.) Dr. Prescot prescribed Meloxicam, to be used on a daily basis, and referred Plaintiff to see a physiatrist. (R. 279.)

Dr. T. Felix, a physiatrist, examined Plaintiff the following day, July 7, 2009. On examination, Plaintiff walked with a normal gait and was able to stand on her heels and toes. (R. 241.) Dr. Felix recommended x-rays for both of Plaintiff's knees, as well as physical therapy and vocational rehabilitation. (R. 238, 242.) Felix did not provide specifics or an assessment of Plaintiff's residual functional capacity; however, he opined that Plaintiff had limitations that required vocational rehabilitation and/or specialized supports. (R. 239.)

On July 10, 2009, Dr. Jacqueline McGibbon, who did not personally examine Plaintiff, opined that Plaintiff was employable, but required vocational rehabilitation services and a modified work environment, with accommodations to allow for limited bending, climbing, kneeling, and lifting. (R. 285.)

##### iii. Dr. Dickerson

On September 15, 2009, Dr. Robert Dickerson conducted an internal medicine examination of Plaintiff at the request of the Division of Disability Determination. (R. 252.) On examination, Plaintiff appeared in no acute distress and needed no help changing or getting on or off the examination table. (R. 253.) Plaintiff also walked with a normal gait, could walk on her heels and toes without difficulty, and could fully squat. (*Id.*) Plaintiff's strength was 5/5 in her upper and lower extremities and grip. (R. 254.) Dr. Dickerson diagnosed lumbar disc disease.

He also opined that Plaintiff was "mildly restricted" for bending, lifting, carrying, and stooping, but "unrestricted for any other activity at this time." (R. 254.)

### iv. Dr. Tranese

On January 6, 2010, Dr. Louis Tranese conducted an orthopedic examination of Plaintiff at the request of the Division of Disability Determination. (R. 265-67.) On examination, Dr. Tranese noted that Plaintiff appeared to be in no acute distress, had a normal gait, and could walk on heels and toes without difficulty; however, he observed that Plaintiff had difficulty squatting beyond 75 percent maximum capacity due to back pain. (R. 266.) Plaintiff also possessed 5/5 strength in her upper and lower extremities and hands. (*Id.*)

Dr. Tranese concluded that Plaintiff had "moderate limitations in frequent bending and squatting," "moderate to marked limitations with heavy lifting," and "mild to moderate limitations with long distance ambulation and frequent stair climbing." (R. 267.) Additionally, Dr. Tranese noted that Plaintiff "may have mild limitations with sitting or standing long periods." (*Id.*) However, Dr. Tranese opined that Plaintiff had "no other physical deficits." (*Id.*)

## DISCUSSION

### I. Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court

to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

## II. Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial

burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1.

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the

claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

**III.     ALJ's Decision**

The ALJ followed the five-step process and determined that Plaintiff had the RFC for light work, with limitations, and therefore, was not disabled. (R. 14-19.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 15, 2009, the date she allegedly became disabled. (R. 16.) At step two, the ALJ found that Plaintiff's disc herniation, with lumbar radiculopathy, qualified as severe impairments. (*Id.*) At step three, the ALJ determined that Plaintiff's impairments, individual or combined, did not meet one of the impairments in Appendix 1. (*Id.*)

At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform "light work," except that Plaintiff could only bend, squat, and climb stairs on occasion, and needed to be able to alternate between sitting and standing at will. (R. 17.) Additionally, relying on testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of performing past relevant work as a gluer at a factory. (R. 19.)

In determining Plaintiff's residual functional capacity, the ALJ assigned "great weight" to the two examining consultants, Dr. Tranese and Dr. Dickerson. (R. 18.) The ALJ also cited evidence from Arbor WeCare, including the finding from Dr. McGibbon, a non-examining source, that Plaintiff was employable in a modified work environment. (R. 17-18.) The ALJ did not indicate what weight, if any, she gave to the opinion of Dr. George, Plaintiff's treating physician. (R. 18.)

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the

intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. (R. 17.) In assessing Plaintiff's credibility, the ALJ relied on Plaintiff's testimony that medication helped to alleviate the pain. (R. 18.) The ALJ also indicated that there was a lack of objective medical evidence as to the severity of Plaintiff's condition. (*Id.*)

## IV. Application

The substantive portion of Plaintiff's opposition to the Commissioner's motion reads, in its entirety, as follows: "This motion should be denied because I am unable to work my problem with my back and knees get worse everyday now it is even messing up my hands and wrist so I cannot do daily activities such as cooking and cleaning. If you could please review this case again it would gladly be appreciated." (Pl.'s Aff. ¶ 3.) In reviewing a *pro se* filing, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Accordingly, the court will construe Plaintiff's pleadings and papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted).

### a. Failure to Develop the Record and Assign Weight to Medical Evidence

With respect to Dr. George, Plaintiff's treating physician, the ALJ's entire analysis of his findings reads as follows: "There is a note from June 2009 stamped by Dr. Jacob George reporting that the claimant was unable to work[]; however in July 2009 he said that [Plaintiff's] lumbar radiculopathy would likely only limit her ability to work." (R. 18.) As set forth below, remand is appropriate for further development of the record and reassessment of Dr. George's

10

opinion.

With respect to "the nature and severity of [a claimant's] impairment(s)," 20 C.F.R. § 404.1527(d)(2), "[t]he SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d. Cir. 2003). A claimant's treating physician is one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988). A treating physician's medical opinion regarding the nature and severity of a claimant's impairment is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). The Second Circuit has noted that "[w]hile the opinions of a treating physician deserve special respect . . . they need not be given controlling weight where they are contradicted by other substantial evidence in the record." *Lazore v. Astrue*, 443 F. App'x 650, 652 (2d Cir. 2011) (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

The ALJ must consider the following factors to determine how much weight to give the treating physician's opinion: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant but unspecified factors. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ is required to provide "good reasons" for the weight accorded to a treating physician's medical opinion; failure to do so is a ground for remand. *Schaal*, 134 F.3d at 503-05; *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("Failure to provide 'good reasons'

for not crediting the opinion of a claimant's treating physician is a ground for remand.") However, the ultimate determination that a claimant is "disabled" or "unable to work" is reserved to the Commissioner. 20 C.F.R. § 404.1527(d). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell*, 177 F.3d at 133.

The ALJ's adherence to the treating physician rule operates in tandem with the affirmative duty to develop a full and fair record. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d)-(f) (setting forth the affirmative obligations of ALJs). As part of the ALJ's fundamental duty to develop the record, he is responsible for seeking additional information when the treating physician has not provided an adequate basis to determine a claimant's disability. *See* 20 C.F.R. § 404.1512(d)-(e) (describing responsibility to develop the record). In describing this duty, the Second Circuit has explained that a treating physician's failure to provide a full explanation or clinical findings supporting his or her determination that a plaintiff is disabled, "does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

Here, Dr. George, who regularly examined Plaintiff and appears to be the only treating physician of record, opined that Plaintiff was unable to work, and further, that the type of the work Plaintiff could perform would be limited by her condition. In her decision, however, the ALJ failed to even acknowledge that Dr. George was Plaintiff's treating physician, let alone specify the weight that she gave to Dr. George's opinion. Instead, the ALJ accorded "great weight" to the opinions of the two consultative examiners—each of whom examined Plaintiff on

only one occasion—but failed to specify why their limited contact produced more reliable information than Dr. George. (R. 18.)

Furthermore, because Plaintiff appeared *pro se*, the ALJ had a "heightened duty" to develop the record. *See Echevarria*, 685 F.2d at 755. Yet, there is no indication in the record that the ALJ ever requested a residual functional capacity assessment from Dr. George. *See Johnson v. Astrue*, 811 F. Supp. 2d 618, 629 (E.D.N.Y. 2011) (finding remand warranted where "there [was] no reference in the decision or the record as a whole that the ALJ requested RFC assessments from plaintiff's treating sources").[2] Moreover, despite the absence of Dr. George's treatment records, the ALJ never directed Plaintiff to obtain copies of her treatment records or to secure an opinion from Dr. George as to her residual functional capacity during the hearing. *See Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) ("At a minimum, if the ALJ is inclined to deny benefits, he should advise a claimant that her case is unpersuasive and suggest that she supplement the record or call her treating physician as a witness."). Finally, to the extent the ALJ found Dr. George's opinion to be entitled to less weight because his notes were contradictory or vague, the ALJ should have made reasonable attempts to resolve the perceived inconsistency or gaps.[3] *See Lazo-Espinoza v. Astrue*, 2012 WL 1031417, at *13 (E.D.N.Y. Mar.

---

[2] Medspan Clinic, Dr. George's place of employment, did not respond to a previous information request from Division of Disability Determination for copies of Plaintiff's medical records and treatment notes. (R. 235, 262-63.) Nonetheless, that information request failed to ask for a residual functional capacity examination from Dr. George. (*Id.*)

[3] The Commissioner suggests that Dr. George's two notes, viewed together, are consistent with the ALJ's finding that Plaintiff could perform light work. (Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings at 14, Docket Entry No. 13.) However, because Dr. George's notes, on their face, lack specify and detail concerning Plaintiff's residual functional capacity, it cannot be said that they constitute evidence of a capacity to perform light work. *See Pimenta v. Barnhart*, 2006 WL 2356145, at *5 (S.D.N.Y. Aug. 14, 2006) ("[T]he absence of a statement that the plaintiff is precluded from all work is not the same as an affirmative declaration that he is able to return to employment.").

27, 2012) ("[When] an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.") (internal quotation marks and citation omitted).

In sum, this matter must be remanded because the ALJ failed to specify the weight accorded to Dr. George's opinion and properly develop the record. On remand, the ALJ should make a direct request to Dr. George that he provide an assessment of Plaintiff's residual functional capacity and copies of Plaintiff's supporting medical and examination records, and, if no response is received, also direct Plaintiff to obtain the materials. The ALJ is also directed to reevaluate Dr. George's findings in accordance with the applicable regulations.

   b.   **Assessment of Plaintiff's Credibility**

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2010). However, the ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996). Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the

intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p.

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief . . . ." *Correale-Englehart,* 687 F. Supp. 2d at 435. Where the ALJ neglects to discuss at length his credibility determination and the reviewing court cannot decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36; *see also Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at \*5 (E.D.N.Y. Jan. 14, 2011) (finding that the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at \*22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors).

Here, remand is warranted in light of the ALJ's failure to discuss the relevant regulatory factors. In assessing Plaintiff's credibility, the ALJ addressed only the fourth factor. In doing so, the ALJ referenced Plaintiff's statement at the hearing that medication helped to relieve her

back pain; however, the ALJ's analysis is incomplete, as the ALJ failed to acknowledge Plaintiff's reported side effects of vomiting and dizziness and neglected to consider the type or dosage of medication used. (R. 18, 35.) The ALJ also failed to discuss or consider any of the other relevant factors. For example, the ALJ's decision does not address how Plaintiff's treatment and measures to relieve pain—including Plaintiff's testimony that she goes to physical therapy three times a week and needs to lie down for most of the day to relieve pain (R. 36-38)—led her to conclude that Plaintiff's testimony concerning the intensity and limiting effects of her condition was not credible.

Accordingly, on remand, the ALJ is directed to explicitly address the relevant regulatory factors in making a new credibility determination.

    c.    **Presentation of New Evidence**

Liberally construed, Plaintiff's affidavit also can be read to argue that remand is appropriate based on new evidence. Remand for consideration of additional evidence is appropriate if: (1) the proffered evidence is new and not merely cumulative of what is already in the record; (2) the proffered evidence is material, meaning that it is relevant to the claimant's condition during the time period for which benefits were denied, probative, and reasonably likely to have influenced the Commissioner to decide his application differently; and (3) good cause exists for the failure to present the evidence earlier. *Mulrain v. Comm'r of Soc. Sec.*, 431 F. App'x 38, 39 (2d Cir. 2011).

Here, to satisfy the materiality requirement, Plaintiff must present evidence of her condition from May 15, 2009, the alleged onset date, up to May 21, 2010, the date of the ALJ's decision. (R. 14, 19.) *See Felix v. Astrue*, 2012 WL 3043203, at *12 (E.D.N.Y. July 24, 2012) ("[N]ew evidence is only material if it is relevant to the plaintiff's condition during the period for

which benefits were denied, spanning from the alleged onset date through the ALJ's decision."). In her affidavit, dated February 13, 2012, Plaintiff claims that the problems with her back and knees continue to get worse and the pain has spread to her hands; she also claims she can no longer perform daily activities such as cooking and cleaning. (Pl.'s Aff. ¶ 3.) However, on May 4, 2010—the same month that the ALJ rendered her decision—Plaintiff testified she was able to cook and perform general cleaning activities and, when specifically questioned about her long-term prognosis and condition, Plaintiff did not indicate that her condition was declining over time or that she suffered from pain in her hands. (R. 33-35.) Accordingly, the proffered evidence, which suggests a worsening of Plaintiff condition after the ALJ's decision, does not provide a basis for remand and can only be considered in a new application for benefits. *See Felix*, 2012 WL 3043203, at *13 ("[N]ew evidence indicating only that the plaintiff's condition has worsened since the ALJ's decision does not meet the materiality requirement."); *Camacho v. Comm'r of Soc. Sec.*, 2005 WL 3333468, at *4 (E.D.N.Y. Dec. 06, 2005) (noting that "[claimant] is, of course, free to reapply for benefits based on conditions that have developed or worsened since the ALJ rendered his decision").

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied. Accordingly, pursuant to the fourth sentence of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the ALJ is to: (i) fully develop the administrative record by obtaining treatment records and a residual functional capacity assessment from Dr. George, and properly assess the weight to be accorded to Dr. George's opinion; and (ii) reassess Plaintiff's credibility and explain the weight given to Plaintiff's testimony in light of all of the relevant factors and Plaintiff's work history. To the extent that Plaintiff's condition has declined or worsened since the date of the ALJ's opinion, Plaintiff is free to reapply for benefits based on those conditions.

SO ORDERED.

Dated: Brooklyn, New York
      March 26, 2013

                                                    /s/
                                     DORA L. IRIZARRY
                                   United States District Judge